# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| LARRY G. PHILPOT | § | |
| --- | --- | --- |
| | § | |
| V. | § | 1:18-CV-00816-RP |
| | § | |
| EMMIS OPERATING COMPANY | § | |

## ORDER

Before the Court are Plaintiff's Motion for Attorney Fees (Dkt. No. 20), Defendant's Response (Dkt. No. 24), and Plaintiff's Reply (Dkt. No. 25). The District Court referred the motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules.

This motion is related to a dispute over Defendant Emmis' default in the earliest stages of this case. Plaintiff Philpot filed his original Complaint on September 24, 2018. Summons was returned executed on October 2, 2019, and Defendant's responsive pleading was due on October 23, 2018. Plaintiff filed a Motion for Entry of Default against Emmis on October 24, 2018, and the clerk of the Court entered default against the Defendant on October 25, 2018. The next day, Philpot filed a Motion for Default Judgment. Emmis then filed an Original Answer seven days later, before the Motion for Default Judgment was even ripe. Several weeks thereafter, Emmis filed a Motion to Vacate Technical Default, to Deem the Filed Answer as timely, and to Deny the Motion for Default Judgment. On December 17, 2018, Judge Pitman granted in part Defendant's Motion to Vacate and denied Plaintiff's Motion for Default Judgment. Judge Pitman stated in his Order:

> [T]he Court finds that conditioning the setting aside of the entry of default on the payment of Plaintiff's attorney fees is inappropriate here. First, as noted above, Defendant's delay in filing an answer does not appear to be willful. Instead, Defendant neglectfully marked the wrong date on the calendar. When Defendant discovered the error, it immediately corrected the mistake by filing its answer. Second, this is not the case where the default involved an extended amount of time or disregard of court orders. Defendant filed its answer less than one week after the

> motion for default judgment was filed, and filed its motion opposing default judgment and moving to vacate the technical default within one month.
>
> To be sure, Plaintiff's counsel certainly expended additional work hours and expenses as a result of the Defendant's default. The Court recognizes that because of Defendant's neglect, Plaintiff's counsel diligently worked to prepare his motions and briefs on this issue. But having found that good cause exists to set aside the entry of default, the Court declines to condition the set aside on Defendant's payment of Plaintiff's related attorney fees.
>
> As a result, Plaintiff may move for attorney fees related to the entry of default and subsequent default judgment in a separate motion. . . . The Court will then review the billings to determine whether and what amount of attorney fees Plaintiff incurred in seeking the default and default judgment, and enter an appropriate award.

(Dkt. No. 17 at 4) (citations omitted). Philpot thereafter filed this motion to recover attorney's fees for seeking entry of default and default judgment.

## I. STANDARD OF REVIEW

Traditionally, under the American rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.LP. v. ASARCO LLC*, 135 S. Ct. 2158, 2161 (2015). Accordingly, "[a] district court may not award attorneys' fees 'unless a statute or contract provides' the basis for such an award." *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 (5th Cir. 2016) (quoting *Baker Botts*, 135 S.Ct. at 2164). The only basis for the award of fees here appears to be a court's authority under FED. R. CIV. P. 55 to condition vacatur of a default on the payment of attorney's fees, as in his motion for fees Philpot cites to no other authority. Whether an award of fees is even warranted here is an important part of the Court's analysis, given that Philpot is not entitled to fees automatically, but instead that decision is within the sound discretion of the Court.[1]

---

[1] Philpot mischaracterizes Judge Pitman's earlier order as having already decided the fee entitlement issue. Rather, as quoted at length above, Judge Pitman ordered Philpot to file a motion for attorney fees, and only then would the Court determine whether fees were appropriate.

## II. ANALYSIS

In all, Philpot seeks a total of $7,252.23 in fees, based on the expenditure of 6.16 hours of work on the motions seeking entry of default and default judgment, and 15.44 hours responding to the Defendant's motion to vacate the entry of default. Though there are reasons the Court could quibble with the hours alleged, it need not do so, given that, as is explained below, it does not believe Philpot should be awarded any fees in the circumstances presented here.

An important factor here is that Philpot and his counsel are, in essence, copyright "trolls." Philpot has filed numerous actions nearly identical to this one not only in this Court, but throughout the country, and estimates that he has filed 50 such cases. *See Philpot v. WOS, Inc.*, 2019 WL 1767208 at *3 (W.D. Tex. Apr. 22, 2019). His tactic is to place his photos on the internet, protected only with a "Creative Commons" license. This means that anyone may use the images for free, so long as they provide proper attribution to Philpot, along with proper identification of the image. *Id.* at *2. When users re-publish one of Philpot's images without attribution, he sues them for damages. In this suit, and in the others filed in this court, Philpot claims he is "a renowned freelance photographer," with a "reputation as a premier photographer." Dkt. No. 1 at ¶¶ 11-12. Claiming that use of his work without attribution causes him to lose business opportunities, and weakens his reputation, he requests significant monetary damages in these cases. His "standard" damage request appears to be $150,000 per photo use. In fact, however, as Judge Pitman found in the *WOS* case:

> [Philpot] has no training in photography and has never been employed full-time as a photographer; he works as a freelancer. He is formally affiliated with "OnStage Magazine," a company he created to gain access to bigger events, but which does not actually produce magazines or generate advertising revenue. He has never been hired to photograph a concert or other event. He is compensated for his work mostly in concert tickets, food, and drinks. Pressed to identify monetary compensation for his work, Philpot testified that once he did a shoot for a hidden-camera show and that he once earned $0.88 for an image of Prince that he took at a concert he paid $2,000 to attend. He sells prints of his photos but has made "not very much" money—possibly less than $100 total—doing so. He loses money on his photography work almost every year.

3

*WOS*, 2019 WL 1767208 at *2. Further, when the *WOS* case was before the undersigned on a motion to compel, Philpot objected to producing financial records to demonstrate his alleged income from his freelance photography work. When the undersigned overruled Philpot's objections to producing tax returns, his counsel informed the Court that Philpot had not filed returns for several years. In sum, Philpot is far from a shining example of a litigant who uses the court system to vindicate important rights. Instead, he seems to want to use the courts as a blunt object with which to coerce nuisance value settlements from unsuspecting parties.[2]

His attorney's actions in this case validate that conclusion. The day after the answer was due here, Philpot sought entry of default. As that is a ministerial action by the Clerk, such an entry was automatically entered within a day, and Philpot immediately filed his motion for a default judgment. Seizing the opportunity to claim damages without a party to cross examine the request, he once again asked for the maximum statutory damage amount of $150,000 for the use of his one photo. Dkt. No. 10 at ¶ 12. Then, when less than a week later Emmis filed its answer, Philpot objected to the Court setting aside the default, and contended that if the Court did do so, he should at least recover the attorney's fees he incurred fighting the set aside of the default—the $7,200.00 amount now at issue here. In other words, this dispute is entirely one of Philpot and his counsel's own making. As Emmis points out, Philpot did not need to file a request for default the day after a missed deadline. And as Emmis also notes, the motion Philpot filed is identical to one he filed in the Northern District of Texas, undermining the claim that his counsel needed six hours (or $2,100) to generate the very same motion here. More to the point, once Emmis filed its answer, it was

---

[2]In two of the cases Philpot filed in this Court, he has accepted Rule 68 offers of judgment, both of which appear to the undersigned to have been driven primarily by what the defendants in those cases anticipated having to spend on attorney's fees, and not by any potential damages that might be awarded against them. *See Philpot v. WOS, Inc.*, 1:18-cv-339 RP, Dkt. No. 44 (April 22, 2019); *Philpot v. Equipboard, Inc.*, 1:18-cv-341 RP, Dkt. No. 9 (July 10, 2018).

Philpot's counsel who chose to make an issue of the default being set aside, notwithstanding that default judgments are "'generally disfavored in the law' and thus 'should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement.'" *Silvas v. Remington Oil and Gas Corp*, 109 Fed.Appx. 676, 677 (5th Cir. 2004) (quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984)). This is because "where there are no intervening equities"—as is the case here—"any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). Philpot was swimming upstream when he decided to oppose Emmis' request to set aside the entry of default, and he should not be rewarded with an additional $5,100 for his attorney's time spent making what was going to be a losing argument all along.

### III. CONCLUSION

Because the Court concludes that Philpot's counsel was overly zealous in seeking entry of default, and overly combative in opposing Emmis' motion to set aside the default, and given further his questionable litigation history in the federal courts, the proper exercise of the Court's discretion here is to reject Philpot's request for fees. Accordingly, Plaintiff's Motion for Attorney Fees (Dkt. No. 20) is **DENIED**.

SIGNED this 8th day of July, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE